UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MATTHEW WEYMOUTH,<br>    Plaintiff,<br><br>v.<br><br>PENTUCKET REGIONAL SCHOOL DISTRICT;<br>PENTUCKET REGIONAL SCHOOL<br>COMMITTEE; MICHAEL J. MCLAUGHLIN,<br>individually, and in his capacity as Superintendent<br>of Pentucket Regional School District; JOHN<br>PARKHURST, individually, and in his capacity as<br>Principal of Pentucket Regional High School;<br>ARLENE TOWNES; individually, and in her<br>Capacity as Principal of Pentucket Regional High<br>School; DAVID MORSE, individually, and in his<br>capacity as Athletics Director for Pentucket<br>Regional High School; STEVEN HAYDEN,<br>individually, and in his capacity as a Teacher and<br>Coach at Pentucket Regional High School;<br>MICHAEL BIANCI; ADAM CHAPMAN;<br>SCOTT WILKES,<br>    Defendants. | MAGISTRATE JUDGE Cohen<br><br>Civil Action No:<br><br>RECEIPT #_____<br>AMOUNT $_____<br>SUMMONS ISSUED____<br>LOCAL RULE 4.1_____<br>WAIVER FORM_____<br>MCF ISSUED_____<br>BY DPTY. CLK._____<br>DATE_____ |

## COMPLAINT AND JURY DEMAND

### JURISDICTION

1.   This action is brought pursuant to Title 42 U.S.C. §§ 1983 and 1988 and the Fourteenth Amendment to the United States Constitution. Jurisdiction is based upon 42 U.S.C. §§ 1331 and 1343 and the aforementioned statutory and constitutional provisions. The Plaintiff invokes the pendant jurisdiction of this Court to hear and decide claims arising under state law.

1

## PARTIES

2. The Plaintiff, Matthew Weymouth, is a Massachusetts resident presently residing in North Attleboro, Bristol County, Massachusetts, and was a Massachusetts resident in 2001.

3. The Defendant, Pentucket Regional School District, is a governmental entity organized and existing in accordance with Massachusetts law. The Pentucket Regional School District is a local education agency that serves the towns of Merrimac, Groveland, and West Newbury and oversees public schools in these towns. Its main office is located in West Newbury, Essex County, Massachusetts.

4. The Defendant, Pentucket Regional School Committee, exists in accordance with Massachusetts law, governs and administers the public schools in the Pentucket Regional School District, and develops standards for students and schools in the District. Upon information and belief, the Committee members, who are elected for staggered three-year terms, are residents of the Commonwealth of Massachusetts.

5. The Defendant, Michael J. McLaughlin, was Superintendent of the Pentucket Regional School District at the time of the incident in this matter. Upon information and belief, he is a resident of the Commonwealth of Massachusetts.

6. The Defendant, John Parkhurst, was Principal of Pentucket Regional High School during a period relevant to this matter. Upon information and belief, he is a resident of the Commonwealth of Massachusetts.

7. The Defendant, Arlene Townes, is Principal of the Pentucket Regional High School and was such position during a time relevant to this matter. Upon information and belief, she is a resident of the Commonwealth of Massachusetts.

8. The Defendant, David Morse, is, and at all relevant times has been, Athletic Director of Pentucket Regional High School. Upon information and belief, he is a resident of the Commonwealth of Massachusetts.

9. The Defendant, Steven Hayden, is, and at all relevant times has been, a teacher and coach at Pentucket Regional High School. Upon information and belief, he is a resident of the Commonwealth of Massachusetts.

10. The Defendant, Michael Bianci, upon information and belief, is a resident of the Commonwealth of Massachusetts, and in 2001 was a student at Pentucket Regional High School.

11. The Defendant, Adam Chapman, upon information and belief, is a resident of the Commonwealth of Massachusetts, and in 2001 was a student at Pentucket Regional High School.

12. The Defendant, Scott Wilkes, upon information and belief, is a resident of the Commonwealth of Massachusetts, and in 2001 was a student at Pentucket Regional High School.

## FACTUAL ALLEGATIONS

13. Matthew Weymouth was 15 years old and about to enter his sophomore year at Pentucket Regional High School in the Summer of 2001.

14. After years of playing on school-sponsored football teams, Weymouth had planned to play on the high school football team.

15. Continuing and prospective members of the Pentucket Regional High School football team were required to participate in a mandatory summer training camp before the season began.

16. As early as eighth grade, Weymouth heard from other students that there was a history of hazing, including verbal harassment and physical assault by older upperclass players perpetuated against younger underclass players, during the high school football summer training camp.

17. For years, there was widespread knowledge and notice among members of the Pentucket Regional School District community, including administrators and faculty, that hazing, including verbal and physical assault, occurred on the high school football team and during related activities.

18. No one of authority in the Pentucket Regional School District, from the Pentucket Regional School Committee members and Superintendent Michael J. McLaughlin to Pentucket Regional High School Principals John Parkhurst and Arlene Townes and Athletic Director David Morse to teachers and coaches such as Steven Hayden, took action to prevent or deter hazing amongst students on the high school football team or protect younger players on the team.

19. In the face of this complacency, the known hazing continued annually as a ritual during the Pentucket Regional High School football summer training camp.

20. In order to avoid being a victim of the hazing and assault, Weymouth decided not to attend the camp or play football in 2001.

21. Hayden, Weymouth's physical education teacher and coach of the high school football team, strongly encouraged Weymouth to participate in the 2001 summer training camp as a prerequisite to playing on the football team.

22. Weymouth informed Hayden of his concerns about hazing at the training camp.

23. Hayden assured Weymouth that faculty chaperones would supervise the team and that he would not be harmed at camp.

24. Lorraine Weymouth, Matthew Weymouth's mother, contacted Morse, the Athletic Director for Pentucket Regional High School, about her son's concerns about the hazing.

25. Morse assured Weymouth's mother that nothing would happen to her son at camp and told the upperclassmen on the football team to speak to Weymouth.

26.  At Morse's behest, several upperclassmen, including the captain of the football team, told Weymouth not to worry about hazing at the training camp and that they would not let anything happen to him there.

27.  Based on these assurances, Weymouth went out for the football team and attended the training camp.

28.  Defendants Michael Bianci, Adam Chapman, and Scott Wilkes were students at Pentucket Regional High School who were members of the high school football team and attended the mandatory training camp.

29.  On August 23, 2001, the second day of camp, Weymouth was playing ping-pong with a few underclassmen on the porch of the cabin where they were staying.

30.  From upstairs, Chapman summonsed Weymouth to go into his room to get a Walkman for Chapman to use.

31.  Chapman was hiding and waiting for Weymouth at the top of the stairs.

32.  When Weymouth reached the top of the stairs, Chapman grabbed Weymouth.

33.  Weymouth attempted to escape the area, but Chapman restrained Weymouth and carried him into a common area.

34.  Wilkes and Bianci held Weymouth down in anticipation of the hazing.

35.  Wilkes pulled down his pants and "teabagged" Weymouth by dragging his genitals across Weymouth's face.

36.  Bianci rolled Weymouth over, pulled down Weymouth's pants, and attempted to insert a peeled banana into Weymouth's rectum.

37.  Approximately 15 to 20 other students, unchaperoned, watched and jeered while the assault occurred.

38. Despite having an anti-hazing policy, the Pentucket Regional School District has failed to enforce its provisions in every way, from prevention to punishment, as required under Massachusetts law.

39. The existence of the policy gave students such as Weymouth and parents the false impression that safety concerns had been addressed and would be addressed by the school.

40. In deciding to attend the camp, Weymouth relied on assurances of safety given to him and his mother by Hayden and Morse, who offered such assurances as agents and employees of the Pentucket Regional School District.

41. Morse's actions in both informing upperclassmen of Weymouth's concerns and his failure to secure Weymouth from harm caused Weymouth to be a target of the hazing.

42. As a result of the incident, Weymouth's grades dropped and he was harassed by other students.

43. Principal Arlene Townes told Weymouth and his parents that Weymouth should be removed from the school because she could no longer assure his safety.

44. Weymouth was forced to leave the school.

45. Weymouth has been and continues to be severely affected emotionally, requiring psychological treatment in both hospital and private settings for flashbacks, nightmares, depression, and post-traumatic stress disorder.

46. Pursuant to M.G.L. c. 258, § 4, presentment letters were sent to Superintendent John D. MacLean, Arlene C. Townes, Steven Hayden, David Morse, and members of the Pentucket Regional School Committee on July 29, 2003.

## CAUSES OF ACTION

### COUNT I
### § 1983 – Federal Civil Rights Violation
### (PENTUCKET REGIONAL SCHOOL DISTRICT)

47.     The Plaintiff, Matthew Weymouth, repeats and realleges Paragraphs 1 through 46 of the instant Complaint as if expressly rewritten and set forth herein.

48.     The Pentucket Regional School District is, and at all relevant times has been, responsible for the policies implemented in the public schools within its district, including the Pentucket Regional High School.

49.     The Pentucket Regional School District was recklessly and/or deliberately indifferent to the hazing on the football team at the Pentucket Regional High School and to the climate within the community, school, and team that facilitated the abuse of students by other students.

50.     The Pentucket Regional School District was aware of the history of hazing perpetuated within the high school football team, including the annual ritual of sexually assaultative behavior during team-sponsored activities.

51.     By and through its agents, the Pentucket Regional School District was explicitly put on notice during conversations between Weymouth and his mother with Hayden and Morse, respectively.

52.     The Pentucket Regional School District disregarded the notice it had that such inappropriate behavior was transpiring amongst student athletes, failing to punish past offenders and failing to protect future victims such as Weymouth from the abusive hazing according to established school policy and state law.

53. By failing to take sufficient adequate precautions and remedial actions, the Pentucket Regional School District ignored an excessive risk that the safety of its students had been, was being, and would continue to be compromised.

54. By creating an anti-hazing policy and failing to implement or enforce the policy, the Pentucket Regional School District gave students like Weymouth and parents the false impressions that safety concerns were being addressed when in fact they were not.

55. The reckless and/or deliberate indifference of the Pentucket Regional School District to the custom and practice of sexual assault and hazing on the high school football team caused student football players to assault Weymouth on August 23, 2001.

56. The Pentucket Regional School District established a special relationship with Weymouth by mandating school attendance and by assuming the custodial responsibility for the care and supervision of Weymouth during all school activities, including the mandatory high school football summer training camp.

57. Through its agents and employees, the Pentucket Regional School District assured Weymouth and his mother that his safety would not be compromised during the mandatory attendance at the football training camp.

58. The Pentucket Regional School District failed in its constitutional duty to maintain a safe environment and to protect Weymouth within the context of this special relationship.

59. The Pentucket Regional School District's failure to protect Weymouth from the assault, despite the District's awareness of the history of extremely inappropriate, physically intrusive student hazing, was outrageous and intolerable.

60. The Pentucket Regional School District recklessly and/or deliberately created a dangerous situation that placed Weymouth in danger of foreseeable harm by known third parties.

61. The Pentucket Regional School District recklessly and/or deliberately guaranteed Weymouth's safety while at the same time informing the eventual perpetrators of Weymouth's concerns, causing him to be a target of the hazing.

62. The foreseeable physical and mental injuries suffered as a result of this state-created danger were, and continue to be, outrageous and shocking.

63. The Pentucket Regional School District committed the above described actions and omissions under color of law and under color of its authority as a State agency, thereby substantially depriving Weymouth of his rights, privileges, and immunities guaranteed to him as a citizen of the United States in violation of 42 U.S.C. § 1983, and depriving Weymouth of rights guaranteed to him by the Fourteenth Amendment to the United States Constitution, including the right to be free from intrusion upon bodily integrity and the right to protection of personal liberty.

WHEREFORE, Matthew Weymouth demands judgment, against the Defendant for compensatory and punitive damages, together with costs, including reasonable attorney's fees pursuant to 42 U.S.C. §1988(b) and pre- and post-judgment interest, and such further relief as this Court deems appropriate.

### COUNT II
### § 1983 – Federal Civil Rights Violation
### (PENTUCKET REGIONAL SCHOOL COMMITTEE)

64. The Plaintiff, Matthew Weymouth, repeats and realleges Paragraphs 1 through 63 of the instant Complaint as if expressly rewritten and set forth herein.

65. The Pentucket Regional School Committee is composed of members who are responsible for ensuring that all students in the Pentucket Regional School District, including Weymouth and his peers, develop their talents and abilities to their highest potential, acquire respect for self and

9

others, and obtain the knowledge and skills to succeed and contribute as ethical, responsible citizens.

66. The members of the Pentucket Regional School Committee were recklessly and/or deliberately indifferent to the hazing on the football team at the Pentucket Regional High School and to the climate within the community, school, and team that facilitated the abuse of students by other students.

67. The members of the Pentucket Regional School Committee were aware of the history of hazing perpetuated within the high school football team, including the annual ritual of sexually assaultative behavior during team-sponsored activities.

68. The members of the Pentucket Regional School Committee disregarded the notice they had that such inappropriate behavior was transpiring amongst students, failing to punish past offenders and failing to protect future victims from the abusive hazing according to established school policy and state law.

69. By failing to make certain that sufficient adequate precautions and remedial actions were taken, the members of the Pentucket Regional School Committee ignored an excessive risk that the safety of the District's students had been, was being, and would continue to be compromised.

70. By endorsing an anti-hazing policy and failing to ensure its proper implementation, the members of the Pentucket Regional School Committee gave students like Weymouth and parents the false impression that safety concerns were being addressed, when in fact they were not.

71. The reckless and/or deliberate indifference of the members of the Pentucket Regional School Committee to the custom and practice of sexual assault and hazing on the high school football team caused student football players to assault Weymouth on August 23, 2001.

72. The members of the Pentucket Regional School Committee recklessly and/or deliberately created a dangerous situation that placed Weymouth in danger of foreseeable harm by known third parties.

73. The members of the Pentucket Regional School Committee recklessly and/or deliberately guaranteed Weymouth's safety while at the same time informing the eventual perpetrators of Weymouth's concerns, causing him to be a target of the hazing.

74. The foreseeable physical and mental injuries suffered as a result of this state-created danger were, and continue to be, outrageous and shocking.

75. The members of the Pentucket Regional School Committee committed the above described actions and omissions under color of state law, thereby substantially depriving Weymouth of his rights, privileges, and immunities guaranteed to him as a citizen of the United States in violation of 42 U.S.C. § 1983, and depriving Weymouth of rights guaranteed to him by the Fourteenth Amendment to the United States Constitution, including the right to be free from intrusion upon bodily integrity and the right to protection of personal liberty.

WHEREFORE, Matthew Weymouth demands judgment, against the Defendants for compensatory and punitive damages, together with costs, including reasonable attorney's fees pursuant to 42 U.S.C. §1988(b) and pre- and post-judgment interest, and such further relief as this Court deems appropriate.

### COUNT III
### § 1983 – Federal Civil Rights Violation
### (MICHAEL J. MCLAUGHLIN)

76. The Plaintiff, Matthew Weymouth, repeats and realleges Paragraphs 1 through 75 of the instant Complaint as if expressly rewritten and set forth herein.

77. Michael J. McLaughlin, as Superintendent of Pentucket Regional School District, was responsible for the policies implemented at and the students who attended all the schools within the Pentucket Regional School District at all times relevant to this matter.

78. McLaughlin was recklessly and/or deliberately indifferent to the hazing on the football team at the Pentucket Regional High School that occurred under his watch and to the climate within the community, school, and team that facilitated the abuse of students by other students.

79. McLaughlin was aware of the history of hazing perpetuated within the high school football team, including the annual ritual of sexually assaultative behavior during team-sponsored activities.

80. McLaughlin disregarded the notice he had that such inappropriate behavior was transpiring amongst students, failing to punish past offenders and failing to protect future victims from the abusive hazing according to established school policy and state law.

81. By failing to take sufficient adequate precautions and remedial actions, McLaughlin ignored an excessive risk that the safety of his students had been, was being, and would continue to be compromised.

82. By endorsing an anti-hazing policy and failing to ensure its proper implementation, McLaughlin gave students like Weymouth and parents the false impression that safety concerns were being addressed, when in fact they were not.

83. The reckless and/or deliberate indifference of McLaughlin to the custom and practice of sexual assault and hazing on the high school football team caused student football players to assault Weymouth on August 23, 2001.

84. McLaughlin recklessly and/or deliberately created a dangerous situation that placed Weymouth in danger of foreseeable harm by known third parties.

85. The foreseeable physical and mental injuries suffered as a result of this state-created danger were, and continue to be, outrageous and shocking.

86. McLaughlin committed the above described actions and omissions under color of law and under color of his authority as an actor in a State agency, thereby substantially depriving Weymouth of his rights, privileges, and immunities guaranteed to him as a citizen of the United States in violation of 42 U.S.C. § 1983, and depriving Weymouth of rights guaranteed to him by the Fourteenth Amendment to the United States Constitution, including the right to be free from intrusion upon bodily integrity and the right to protection of personal liberty.

WHEREFORE, Matthew Weymouth demands judgment, against the Defendant for compensatory and punitive damages, together with costs, including reasonable attorney's fees pursuant to 42 U.S.C. §1988(b) and pre- and post-judgment interest, and such further relief as this Court deems appropriate.

## COUNT IV
### § 1983 – Federal Civil Rights Violation
### (JOHN PARKHURST)

87. The Plaintiff, Matthew Weymouth, repeats and realleges Paragraphs 1 through 86 of the instant Complaint as if expressly rewritten and set forth herein.

88. John Parkhurst, as Principal of Pentucket Regional High School, was responsible for the policies implemented at and the students who attended Pentucket Regional High School at times relevant to this matter.

89. Parkhurst was recklessly and/or deliberately indifferent to the hazing on the football team at the Pentucket Regional High School that occurred under his watch and to the climate within the community, school, and team that facilitated the abuse of students by other students.

90. Parkhurst was aware of the history of hazing perpetuated within the high school football team, including the annual ritual of sexually assaultative behavior during team-sponsored activities.

91. Parkhurst disregarded the notice he had that such inappropriate behavior was transpiring amongst students, failing to punish past offenders and failing to protect future victims from the abusive hazing according to established school policy and state law.

92. By failing to take sufficient adequate precautions and remedial actions, Parkhurst ignored an excessive risk that the safety of his students had been, was being, and would continue to be compromised.

93. By endorsing an anti-hazing policy and failing to ensure its proper implementation, Parkhurst gave students like Weymouth and parents the false impression that safety concerns were being addressed, when in fact they were not.

94. The reckless and/or deliberate indifference of Parkhurst to the custom and practice of sexual assault and hazing on the high school football team caused student football players to assault Weymouth on August 23, 2001.

95. Parkhurst recklessly and/or deliberately created a dangerous situation that placed Weymouth in danger of foreseeable harm by known third parties.

96. The foreseeable physical and mental injuries suffered as a result of this state-created danger were, and continue to be, outrageous and shocking.

97. Parkhurst committed the above described actions and omissions under color of law and under color of his authority as an actor in a State agency, thereby substantially depriving Weymouth of his rights, privileges, and immunities guaranteed to him as a citizen of the United States in violation of 42 U.S.C. § 1983, and depriving Weymouth of rights guaranteed to him by

the Fourteenth Amendment to the United States Constitution, including the right to be free from intrusion upon bodily integrity and the right to protection of personal liberty.

WHEREFORE, Matthew Weymouth demands judgment, against the Defendant for compensatory and punitive damages, together with costs, including reasonable attorney's fees pursuant to 42 U.S.C. §1988(b) and pre- and post-judgment interest, and such further relief as this Court deems appropriate.

## COUNT V
### § 1983 – Federal Civil Rights Violation
### (ARLENE TOWNES)

98. The Plaintiff, Matthew Weymouth, repeats and realleges Paragraphs 1 through 97 of the instant Complaint as if expressly rewritten and set forth herein.

99. Arlene Townes, as Principal of Pentucket Regional High School, was responsible for the policies implemented at and the students who attended Pentucket Regional High School at times relevant to this matter.

100. Townes was recklessly and/or deliberately indifferent to the hazing on the football team at the Pentucket Regional High School that occurred under her watch and to the climate within the community, school, and team that facilitated the abuse of students by other students.

101. Townes was aware of the history of hazing perpetuated within the high school football team, including the annual ritual of sexually assaultative behavior during team-sponsored activities.

102. Townes disregarded the notice she had that such inappropriate behavior was transpiring amongst students, failing to punish past offenders and failing to protect future victims from the abusive hazing according to established school policy and state law.

103. By failing to take sufficient adequate precautions and remedial actions, Townes ignored an excessive risk that the safety of her students had been, was being, and would continue to be compromised.

104. By endorsing an anti-hazing policy and failing to ensure its proper implementation, Townes gave students like Weymouth and parents the false impression that safety concerns were being addressed, when in fact they were not.

105. The reckless and/or deliberate indifference of Townes to the custom and practice of sexual assault and hazing on the high school football team caused student football players to assault Weymouth on August 23, 2001.

106. Townes recklessly and/or deliberately created a dangerous situation that placed Weymouth in danger of foreseeable harm by known third parties.

107. The foreseeable physical and mental injuries suffered as a result of this state-created danger were, and continue to be, outrageous and shocking.

108. Townes committed the above described actions and omissions under color of law and under color of her authority as an actor in a State agency, thereby substantially depriving Weymouth of his rights, privileges, and immunities guaranteed to him as a citizen of the United States in violation of 42 U.S.C. § 1983, and depriving Weymouth of rights guaranteed to him by the Fourteenth Amendment to the United States Constitution, including the right to be free from intrusion upon bodily integrity and the right to protection of personal liberty.

WHEREFORE, Matthew Weymouth demands judgment, against the Defendant for compensatory and punitive damages, together with costs, including reasonable attorney's fees pursuant to 42 U.S.C. §1988(b) and pre- and post-judgment interest, and such further relief as this Court deems appropriate.

## COUNT VI
### § 1983 – Federal Civil Rights Violation
### (DAVID MORSE)

109. The Plaintiff, Matthew Weymouth, repeats and realleges Paragraphs 1 through 108 of the instant Complaint as if expressly rewritten and set forth herein.

110. David Morse, the Athletic Director for Pentucket Regional High School, was at all relevant times responsible for the policies implemented for the Pentucket Regional High School sports teams, for the coaches and staff involved with those teams, and for the successful implementation and enforcement of applicable laws and policies.

111. Morse was recklessly and/or deliberately indifferent to the hazing on the football team at the Pentucket Regional High School that occurred under his watch and to the climate within the community, school, and team that facilitated the abuse of students by other students.

112. Morse was aware of the history of hazing perpetuated within the high school football team, including the annual ritual of sexually assaultative behavior during team-sponsored activities.

113. Morse disregarded the notice he had that such inappropriate behavior was transpiring amongst students on the team, failing to punish past offenders and failing to protect future victims from the abusive hazing according to established school policy and state law.

114. Morse was specifically put on notice by Matthew Weymouth's mother, Lorraine Weymouth, and assured her that nothing would happen to her son at camp.

115. Morse used upperclassmen on the football team to assure Weymouth that he would be safe at the training camp without taking adequate precautions to protect Weymouth.

116. Despite this notice and his assurances, Morse failed to take sufficient adequate precautions and remedial actions to prevent Matthew Weymouth from being assaulted, ignoring an excessive risk that Matthew Weymouth's safety would be compromised.

117. The reckless and/or deliberate indifference of Morse to the custom and practice of sexual assault and hazing on the high school football team and the notice of such given by Lorraine Weymouth caused student football players to assault Weymouth on August 23, 2001.

118. Morse recklessly and/or deliberately created a dangerous situation that placed Weymouth in danger of foreseeable harm by known third parties.

119. Morse recklessly and/or deliberately placed Weymouth in greater danger by alerting the ultimate perpetrators of Weymouth's concerns and then failing to protect Weymouth.

120. The foreseeable physical and mental injuries suffered as a result of this state-created danger were, and continue to be, outrageous and shocking.

121. Morse committed the above described actions and omissions under color of law and under color of his authority as an actor of a State agency, thereby substantially depriving Weymouth of his rights, privileges, and immunities guaranteed to him as a citizen of the United States in violation of 42 U.S.C. § 1983, and depriving Weymouth of rights guaranteed to him by the Fourteenth Amendment to the United States Constitution, including the right to be free from intrusion upon bodily integrity and the right to protection of personal liberty.

WHEREFORE, Matthew Weymouth demands judgment, against the Defendant for compensatory and punitive damages, together with costs, including reasonable attorney's fees pursuant to 42 U.S.C. §1988(b) and pre- and post-judgment interest, and such further relief as this Court deems appropriate.

## COUNT VII
### § 1983 – Federal Civil Rights Violation
### (STEVEN HAYDEN)

122. The Plaintiff, Matthew Weymouth, repeats and realleges Paragraphs 1 through 121 of the instant Complaint as if expressly rewritten and set forth herein.

123. Steven Hayden, Weymouth's physical education teacher and coach of the high school football team, was at all relevant times responsible for the oversight of the high school football team, including ensuring that student athletes and staff obeyed the policies of the school and laws of Massachusetts.

124. Hayden was recklessly and/or deliberately indifferent to the climate within his own football team and the actual hazing behavior that occurred directly under his watch, facilitating the continuing abuse of his own student athletes by other student athletes.

125. Hayden was made aware, through his conversation with Weymouth and other prior notice, of the history of hazing perpetuated within his own football team, including sexual assaultative behavior.

126. Despite Weymouth's concerns and other notice about hazing at the summer football camp, Hayden emphasized participation in the summer training camp as a prerequisite for playing football and assured Weymouth that he would be supervised at camp.

127. Hayden disregarded the notice he had that such inappropriate behavior was transpiring amongst students on his team.

128. Despite this notice, Hayden failed to take sufficient adequate precautions and remedial actions to protect Weymouth from the abusive hazing, ignoring an excessive risk that Weymouth's safety would be compromised.

129. The reckless and/or deliberate indifference of Hayden to the custom and practice of sexual assault and hazing on the high school football team and the notice of such given by Weymouth caused student football players to assault Weymouth on August 23, 2001.

130. Hayden recklessly and/or deliberately created a dangerous situation that placed Weymouth in danger of foreseeable harm by known third parties.

131. The foreseeable physical and mental injuries suffered as a result of this state-created danger were, and continue to be, outrageous and shocking.

132. Hayden committed the above described actions and omissions under color of law and under color of his authority as an actor of a State agency, thereby substantially depriving Weymouth of his rights, privileges, and immunities guaranteed to him as a citizen of the United States in violation of 42 U.S.C. § 1983, and depriving Weymouth of rights guaranteed to him by the Fourteenth Amendment to the United States Constitution, including the right to be free from intrusion upon bodily integrity and the right to protection of personal liberty.

WHEREFORE, Matthew Weymouth demands judgment, against the Defendant for compensatory and punitive damages, together with costs, including reasonable attorney's fees pursuant to 42 U.S.C. §1988(b) and pre- and post-judgment interest, and such further relief as this Court deems appropriate.

## PENDANT CLAIMS

### COUNT VIII
### Massachusetts Tort Claims Act – Negligence
### (PENTUCKET REGIONAL SCHOOL DISTRICT)

133. The Plaintiff, Matthew Weymouth, repeats and realleges Paragraphs 1 through 132 of the instant Complaint as if expressly rewritten and set forth herein.