# ATTACHMENT A

Westlaw.

Not Reported in F.Supp.2d
2002 WL 15695 (D.Mass.)
(Cite as: 2002 WL 15695 (D.Mass.))

Page 1

Only the Westlaw citation is currently available.

United States District Court, D. Massachusetts.

William MORGAN
v.
David I. DRISCOLL, et al.

No. CIV.A. 9810766RWZ.

Jan. 3, 2002.

MEMORANDUM OF DECISION

ZOBEL, D.J.

*1 Plaintiff, William Morgan, is, according to his Amended Complaint, "a black minor male who, at all relevant times, was a freshman at Medway High School for the school year 1996-1997." He alleges, in brief, that in the early months of 1997, defendants, Mathew Mainini, Gregory Mainini, Travis Chilers, Matthew Foster, Ryan Skelley and Scott Oliver, who were also students at Medway High School, made racially derogatory comments to plaintiff and assaulted and beat him. He further asserts that the school administrators, although notified of the conduct of these students, failed to take action or took ineffective action to redress the wrongs committed against plaintiff. In his ten count complaint plaintiff claims: under 42 U.S.C. § 1983, that the school administrators, David Driscoll, Joseph Hanlon, and Arthur Bettencourt, as well as the School Committee and the Town of Medway, failed to adopt appropriate policies and protect plaintiff against race discrimination (Counts 1 and 2); under 42 U.S.C. §§ 1985 and 1986, that these same defendants failed to prevent the students' conspiracy to discriminate against plaintiff (Counts 3 and 4); under Mass. General Laws, ch. 12, that the school administrators, the students and their parents interfered with plaintiff's rights by threats, intimidation and coercion (Count 5); that defendants intentionally inflicted emotional distress (Count 6); under Mass Gen. Laws, ch. 93 § 102, that defendants discriminated against plaintiff because of his race (Count 7); that the students and their parents committed assaults and battery against plaintiff (Count 8); and that the Town and the School Committee were negligent and liable under Mass. Gen. Laws ch. 258 (Count 9). Plaintiff's mother claims against the Town and the School Committee for loss of consortium (Count 10).

The school administrators, the school committee and the Town of Medway have moved for summary judgment, as has Travis Chiler, one of the students, and his father, Barry Chiler. Though clearly plaintiff felt that defendants had wronged him, none of his claims provide a basis for recovery against the moving parties.

*Factual Background*

The allegations set forth in the complaint and the plaintiff's deposition testimony set forth the following facts. Plaintiff William Morgan ("Morgan") was friends with the Medway High School students who are defendants in this action ("student defendants"). The boys lived in the same neighborhood and often hung around together. In the summer of 1996, before entering his freshman year at Medway, Morgan became involved in several physical fights with defendant Greg Mainini. These fights took place in neighborhood parks, and not on school grounds. Nonetheless, throughout the fall of 1996, Morgan continued to hang around with Mainini and the other student defendants. In November, Morgan had another fight with Greg Mainini. That night Mainini's father went to Morgan's home and threatened his stepfather, and the next day Morgan's mother filed criminal charges against the Maininis.

*2 Following this incident, Morgan began to experience harassment and verbal abuse from the Maininis and other students. The day after Morgan's mother filed charges, the Mainini boys followed Morgan on his bicycle and called him names as he drove past their house. At school, Matt Mainini and his friends began taunting Morgan. Although Morgan is unable to recall each specific incident of harassment, he alleges generally that students squirted him with water, pushed his books out of his hands, attacked him physically, and called him names. None of the name-calling was racial in nature until February 1997, when the Mainini boys and some of Matt Mainini's friends started calling Morgan "nigger" and "papoogee", which he took as a racial slur.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2002 WL 15695 (D.Mass.)
**(Cite as: 2002 WL 15695 (D.Mass.))**

Page 2

Morgan complained to school officials in February, and assistant principal Joseph Hanlon ("Hanlon") investigated the incidents. Hanlon spoke with and counseled all of the students Morgan had identified. The name-calling continued, and Morgan began to feel ostracized at his lunch table (where he still sat with Greg Mainini and friends). School officials then took a number of steps to address the animosity between Morgan and the other students: they spoke to the parents of the offending students about the situation; offered peer counseling to all of the students involved; disciplined individual students as needed (including suspending Greg Mainini); separated Morgan from the offending students in classes and at lunch; provided additional hallway and lunch room monitoring; and increased efforts at educating students and faculty about racial diversity and tolerance. Finally, in May and June, the school officials retained a professional mediation consultant to work with all of the families involved. These mediation attempts were unsuccessful, largely because some of the families would not agree to meet with other families. Despite the school's efforts, Morgan continued to feel unwelcome at Medway. Ultimately, Morgan's family decided to transfer him to another high school for the following school year.

*Summary Judgment Standard*

Summary judgment is appropriate when "a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-323 (1986). The moving party has the initial burden of demonstrating this failure of proof, after which the burden shifts to the non-moving party to establish the existence of at least one genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-250 (1986). In determining whether the evidence supports trial on a particular issue, the court must "view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Barbour v. Dynamics Research Corp.,* 63 F.3d 32, 36 (1st Cir.1995). Despite the relatively lesser burden on the non-moving party, plaintiff's claims do not meet it. He has failed to establish essential elements of every claim brought against the school officials, school committee, the Town of Medway, and Travis and Barry Chiler.

I. *Claims Against School Officials, School Committee and Town of Medway*

A. *42 U.S.C. § 1983 (Counts One and Two)*

*3 To prevail under § 1983, a plaintiff must show that the defendant was acting under the color of law and caused the plaintiff to be deprived of a constitutionally protected right or privilege. For purposes of summary judgment, I will assume that the school officials, school committee and town were acting under color of law. My inquiry, therefore, will focus on the causation of the alleged constitutional rights violations.

Importantly, Morgan does not allege that the school officials, school committee and Town of Medway were directly responsible for any harassment, but only that these defendants caused the alleged constitutional violations to occur by (1) failing to adopt and implement effective customs and policies dealing with racial harassment, including in the training of its employees, and (2) failing to protect Morgan from harassment by other students.

1. *Failure to adopt policy and train employees regarding racial harassment (Count 1)*

Morgan first claims that the Town of Medway, the school committee, and school officials David Driscoll, Joseph Hanlon and Arthur Bettencourt (the "school defendants") deprived him of his constitutional rights by failing to adopt policies and train employees on the topic of racial harassment.

The Supreme Court has established an extremely high standard for municipal liability based on a failure to train employees: a plaintiff must show that the failure to train amounts to deliberate indifference to the constitutional rights of the plaintiff, and that this indifference was the "moving force" behind the alleged constitutional violation. *City of Canton v. Harris,* 489 U.S. 378, 388-389 (1989); *Armstrong v. Lamy,* 938 F.Supp. 1018, 1035-1036 (1st Cir.1996) (applying the *Canton* rule in the context of an alleged failure to train school employees).

The facts asserted by plaintiffs simply do not support a finding that the school defendants were deliberately indifferent to the harassment endured by Morgan, or that their actions (or inactions) were the "moving force" behind Morgan's alleged constitutional violations. Documentary evidence shows, and the plaintiffs do not deny, that school officials were first notified of the conflicts between Morgan and the student defendants in February, 1997. Far from ignoring Morgan's complaints, they took numerous steps to address the problem, involving not only Morgan but also the other students, their families and

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

a professional mediator. These facts simply do not permit an inference that the school defendants were deliberately indifferent to Morgan's situation, or that their actions in any way caused the alleged harassment. Because the factual evidence provided by the plaintiff cannot satisfy the causation requirement of § 1983, his "failure to train" claims under § 1983 must fail.

2. *Failure to protect plaintiff from discrimination and assault (Count 2)*

The plaintiff has also brought suit against the school officials as individuals under § 1983, claiming that they violated his constitutional rights by failing to protect him from harassment and assault by the student defendants. It is unclear from the complaint whether Morgan is suing the school officials in their official or individual capacities. I will therefore consider both theories of liability.

a. *Official Capacity*

**\*4** Claims against municipal agents in their "official capacity" are simply another method of suing the municipality itself. *Monell v. Dept. of Social Services of City of N.Y.,* 436 U.S. at 690 n. 55. I thus consider whether the school officials, as representatives of the municipality, had a duty to protect Morgan from harassment by the other students, and whether their failure to do so led to a deprivation of his constitutional rights.

The Supreme Court has imposed strict limits on § 1983 recovery for injuries caused by private third parties, noting that the Due Process clause was intended "to protect people from the State, not to ensure that the State protect[ ] them from each other". *DeShaney v. Winnebago County Dep't of Social Services,* 489 U.S. 189, 196 (1989). Under *DeShaney,* the government has no duty to protect citizens from deprivations of liberty by third parties, except where (1) the government has custody of the individual and has a duty of care based on that "custodial special relationship," or (2) the government took affirmative steps which put the individual in danger. *Id.* at 198-202. Since Morgan has not alleged any state-created danger, the only question is whether the school officials had a "custodial special relationship" with Morgan by virtue of his enrollment at Medway; and, if so, whether they breached their duty of care to him.

The vast majority of federal courts have held that schools do not maintain a sufficiently "custodial special relationship" with their students to give rise to a duty to protect them against injury from third parties. *Willhauck v. Town of Mansfield,* 2001 U.S. Dist. LEXIS 13897, \*10-\*11 (D.Mass.2001) (collecting cases). While the First Circuit has been disinclined to accept this broad notion that schools have no duty to protect students from the harmful acts of third parties, it has nonetheless recognized that a school has no general duty to protect students, and might only have a "specific duty" to protect a student in situations where inaction and failure to protect the student would be "truly outrageous, uncivilized, and intolerable" under the circumstances. *Hasenfus v. LaJeunesse,* 175 F.3d 68, 72 (1st Cir.1999) (school's failure to prevent student's suicide attempt, despite many warning signs, did not come close to meeting that outrageousness standard). In light of the school officials' repeated efforts to resolve the conflict between Morgan and the student defendants, it simply cannot be said that their conduct rises to the level of outrageousness required under the First Circuit's holding in *Hasenfus.*

Even where the government's duty to protect is unambiguous, a § 1983 plaintiff must show that the defendants acted with deliberate indifference to the deprivation of his civil rights. Negligence alone is not enough; the government must know of the risk to the individual, and must disregard that risk. *Willhauck,* 2001 U.S. Dist. LEXIS 13897 at \*15-\*16 (citing *Farmer v. Brennan,* 511 U.S. 825, 835-837 (1994)). As discussed above, the actions of school officials in this case cannot be said to amount to deliberate indifference to Morgan's constitutional rights. Thus, the school officials are not liable under § 1983 in their official capacities for failing to protect Morgan from injuries allegedly caused by the student defendants.

b. *Personal Capacity*

**\*5** Inasmuch as any duty to protect Morgan from injury by third parties must derive from a "custodial special relationship" with him, the school officials could only have such a relationship in their official capacities as administrators and employees of the school. In their personal capacity, they have no duty to protect him, and failure to do so violates no law. Thus, the school officials cannot be held liable under § 1983 in their personal capacities for failing to protect Morgan.

B. *42 U.S.C. § 1985 and § 1986 (Counts Three and Four)*

42 U.S.C. § 1985 provides a cause of action for

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2002 WL 15695 (D.Mass.)
**(Cite as: 2002 WL 15695 (D.Mass.))**

Page 4

conspiracy to interfere with civil rights, and 42 U.S.C. § 1986 governs actions for failure to prevent such a conspiracy. Morgan has made claims against the school defendants under both sections.

The § 1985 claim is not supported by the facts of this case because Morgan does not allege that the school defendants *participated* in any conspiracy to deprive Morgan of his civil rights. Rather, he claims that they knew of such a conspiracy perpetrated by the student defendants and did not take reasonable steps to prevent it. Indeed, Morgan's complaint specifically identifies "the 'students' conspiracy to discriminate against the plaintiff" as the conspiracy upon which both his § 1985 and § 1986 claims against the school defendants are based. Since he has made no showing (or even allegation) that the school officials, school committee and town were part of any conspiracy to discriminate against him, his § 1985 claims must fail.

Where a plaintiff has not made out a claim for conspiracy under § 1985, there can be no corresponding claim for failure to prevent that conspiracy under § 1986. *Taylor v. Nichols,* 558 F.2d 561, 568 (10th Cir.1977) (citing *Hahn v. Sargent,* 523 F.2d 461 (1st Cir.1975), *cert. denied,* 425 U.S. 904); *see also Lowden v. William M. Mercer, Inc.,* 903 F.Supp. 212, 218-219 (D.Mass.1995). Accordingly, Morgan's § 1986 claims against the school officials, school committee and town necessarily fail.

C. *Massachusetts Civil Rights Act (Count Five)*

The Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, § 11I (the "MCRA") and 42 U.S.C. § 1983 are parallel statutes and have been interpreted as coextensive, except that the MCRA does not require governmental action. *Garcia v. City of Boston,* 115 F.Supp.2d 74, 84 (D.Mass.2000) (citing *Batchelder v. Allied Stores Corp.,* 393 Mass. 819 (1985)), *aff'd* 253 F.3d 147 (1st Cir.2001). A plaintiff suing under the MCRA, as under § 1983, must show that defendant actually *caused* him to be deprived of his constitutional rights. As described above with regard to his § 1983 claims, the plaintiff has not identified any conduct on the part of the school defendants which caused such a deprivation of rights. Therefore, their motion for summary judgment is granted as to Count Five.

D. *Intentional and Reckless Infliction of Emotional Distress (Count Six)*

*6 To prove intentional or reckless infliction of emotional distress, a plaintiff must show (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress would result from his conduct, (2) that the conduct was extreme and outrageous, beyond all bounds of decency and utterly intolerable in a civilized community, (3) that the defendant's conduct caused the plaintiff's distress, and (4) that the plaintiff's emotional distress was severe. *Dushkin v. Desai,* 18 F.Supp.2d 117, 121 (D.Mass.1998) (citing *Agis v. Howard Johnson Co.,* 371 Mass. 140, 144-145 (1976)). Morgan has made various allegations of callous behavior on the part of school officials, including that they caused him to share a classroom and lunch room with "a student known as a racial aggressor" and told him to "wash his face and get back to class" after being attacked by another student. Even taking all of Morgan's allegations as true, as a matter of law, the school defendants' conduct was not so outrageous as to be considered "beyond all bounds of decency." I therefore need not reach the issues of causation and severity of Morgan's emotional distress.

E. *Massachusetts Equal Rights Act (Count Seven)*

The Massachusetts Equal Rights Act, Mass. Gen. Laws ch. 93, § 102 ("MERA"), entitles "all persons ... regardless of [ ] race ... to the same rights enjoyed by white male citizens to make and enforce contracts, to inherit, to purchase, to lease, sell, hold and convey real and personal property, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property." Although Morgan claims that he was denied equal protection of the laws in violation of this statute, he has not alleged any facts which support this claim. The MERA protects the right to make and enforce contracts, and Morgan has not identified any contractual right or opportunity which was lost or interfered with as a result of the conduct of the school officials, school committee or Town of Medway. Furthermore, recent case law in Massachusetts has limited the application of the MERA to employment discrimination claims. *McClure v. Town of Brookfield,* 1999 Mass.Super. LEXIS 133, *9-*10 (March 10, 1999). Accordingly, the claim under the MERA is fatally defective.

F. *Massachusetts Tort Claims Act (Count Nine)*

The plaintiff further argues that the Town of Medway and the School Committee are liable for injuries caused by the negligent actions of their

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

employees pursuant to the Massachusetts Tort Claims Act, Mass. Gen. Laws ch. 258, § 2 ("MTCA"). However, the statute specifically excludes liability for "any claim arising out of an intentional tort, including ... intentional mental distress." MTCA § 10(c). The plaintiff has not alleged any actionable negligence on the part of the school officials, nor do the facts of this case support a claim of negligence. Indeed, Morgan's only tort claim against the school officials alleges intentional infliction of emotional distress, which is specifically excluded under the MTCA. Thus, Morgan's MTCA claim necessarily fails.

*7 Morgan's MTCA claim is also barred by § 10(b) of the statute, which precludes employer liability for "any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function." To the extent that the school's methods of managing student conflicts are discretionary, they cannot be the basis for a claim under the MTCA. In *Harry Stoller & Co. v. Lowell,* 412 Mass. 139 (1992), the Supreme Judicial Court established a two-part test for determining whether a function is "discretionary" within the meaning of MTCA § 10(b). First, the court must consider whether the conduct is specifically governed by any statute or other regulation; if so, it is not discretionary. See *Alake v. City of Boston,* 40 Mass.App.Ct. 610, 612 (1996) (following *Harry Stoller* ). Morgan has cited no statute or regulation limiting the school officials' discretion to make disciplinary decisions. Second, the court must decide whether the discretionary function is merely operational, or is the type of "policy-making or planning" that § 10(b) was designed to immunize. *Id.* While the basic supervision of students is generally considered to be an operational function, the disciplinary decisions challenged by the plaintiff--methods of addressing racial harassment and decisions as to whether offending students should be allowed to share a lunch room or classroom with the plaintiff--are just the kind of policy-level disciplinary decisions that Massachusetts courts have deemed "discretionary functions" within the scope of MTCA § 10(b). See, e.g., *Cady v. Plymouth-Carver Regional Sch. Dist.,* 17 Mass.App.Ct. 211 (1983) (holding that a decision to allow two students to return to school after they were suspended for fighting with a third student was a "policy and planning" decision); *Alake,* 40 Mass.App.Ct. at 615 n. 7 (affirming *Cady* 's characterization of that decision as discretionary). Clearly, the school officials' response to the alleged racial harassment was discretionary and within the scope of § 10(b), and therefore cannot be the basis for a claim under the MTCA.

Finally, Morgan's MTCA claim is barred under MTCA § 10(j), which states that the statute does not apply to "any claim based on ... failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person." Morgan's claims against the school officials fit squarely within this exclusion, as he alleges no direct tortious conduct by the school officials themselves, but only a failure to protect him from harassment and assault by other students.

G. *Loss of Consortium (Count Ten)*

The plaintiff's mother, Ruth Wallace, has made a claim against the Town of Medway and the Medway School Committee under Mass. Gen. Laws ch. 231, § 85X. The statute enables parents of a minor child who has been seriously injured to recover from the person legally responsible for that injury. Since there has been no showing that Town and School Committee are liable for Morgan's injury, Mrs. Wallace's dependent claim for loss of consortium claim must also fail.

II. *Claims Against Travis Chiler and Barry Chiler*

A. *Massachusetts Civil Rights Act (Count Five)*

*8 To prevail under the MCRA, Mass. Gen. Laws ch. 12, § 11I, a plaintiff must establish a deprivation of constitutional rights caused by threats, intimidation or coercion. Morgan points to a wide variety of actions by the student defendants, as a group, which might be construed as threats or intimidation. However, as this motion has been brought by Travis Chiler and his father only, I must limit my analysis to the allegations and assertions of threats or intimidation pertaining to Travis Chiler directly.

The Supreme Judicial Court defined the terms "threats, intimidation or coercion" in *Planned Parenthood League of Massachusetts, Inc. v. Blake,* 417 Mass. 467 (1994):

> "Threat"... involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm. "Intimidation" involves putting in fear for the purpose of compelling or deterring conduct. ["Coercion" is] "the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done."
>
> *Id.* at 474 (citations omitted). In applying these

Not Reported in F.Supp.2d
2002 WL 15695 (D.Mass.)
**(Cite as: 2002 WL 15695 (D.Mass.))**

Page 6

definitions, Massachusetts courts have identified "actual or potential physical confrontation accompanied by a threat of harm..." as an important element of MCRA claims. *Id.* at 473 (collecting cases). Racial slurs alone, without an accompanying threat of physical harm, do not constitute "threats, intimidation or coercion" and will not sustain a cause of action under the MCRA. *Shabazz v. Cole,* 69 F.Supp.2d 177, 201 (D.Mass.1999).

The factual allegations against Travis Chiler (and, by extension, his father Barry Chiler) are that he called the plaintiff racially derisive names and told him to move from his usual lunch table. Morgan does not claim that Chiler ever physically touched him, or threatened to do so, but only that he and the other students collectively vowed to "get" Morgan after his family filed a complaint against the Maininis. Indeed, although Morgan makes clear allegations of physical violence and intimidation, he identifies Matt and Greg Mainini as the primary, if not exclusive, participants in the alleged physical confrontations.

It is certainly conceivable, in light of Morgan's repeated physical confrontations with the Maininis, that he may have feared physical harm as a result of his ongoing conflict with the student defendants *as a group.* However, the few incidents of verbal harassment Morgan attributes to Travis Chiler do not suggest any potential physical confrontation by Travis himself, and thus do not rise to the level of "threats, intimidation or coercion" required under the MCRA. The plaintiff's MCRA claim against Travis and Barry Chilers therefore fails.

B. *Intentional and Reckless Infliction of Emotional Distress (Count Six)*

As previously discussed, a plaintiff claiming intentional or reckless infliction of emotional distress must show (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress would result from his conduct, (2) that the conduct was extreme and outrageous, beyond all bounds of decency and utterly intolerable in a civilized community, (3) that the defendant's conduct caused the plaintiff's distress, and (4) that the plaintiff's emotional distress was severe. *Dushkin v. Desai,* 18 F.Supp.2d 117, 121 (D.Mass.1998) (citing *Agis v. Howard Johnson Co.,* 371 Mass. 140, 144-145 (1976)). These requirements are designed to "avoid [ ] litigation in situations where only bad manners and mere hurt feelings are involved." *Agis* at 145.

*9 Since most of Morgan's allegations against the student defendants refer to the collective actions of the group, it is important here to identify only those actions which he specifically attributes to Travis Chiler. Morgan claims that Chiler called him racially derisive names like "nigger" and "papoogie", made fun of him, and told him to move to a new lunch table. Whether such behavior can be considered "extreme and outrageous" as required under the *Agis* standard is unclear. Mere insults do not rise to the requisite level of outrageousness; however, courts are split as to whether the use of racial epithets can be considered "extreme and outrageous" within the meaning of the *Agis* standard. *Doricent v. American Airlines, Inc.,* 1993 U.S. Dist. LEXIS 15143, *30-*32 (D.Mass.1993) (collecting cases).

In any event, I need not reach the issue of whether Chiler's alleged use of racial slurs is sufficiently "outrageous" to sustain a claim for intentional infliction of emotional distress; the plaintiff's claim must fail, regardless, because his allegations do not support the fourth prong of the *Agis* test which requires that he suffered severe distress as a result of Chiler's conduct. That Morgan cried, and that he was "greatly affected" by the incidents, does not establish the level of severe distress necessary to preserve a claim for intentional infliction of emotional distress.

C. *Massachusetts Equal Rights Act (Count Seven)*

As explained above in reference to the plaintiff's MERA claims against the school defendants, Massachusetts courts have specifically limited the application of the MERA to employment discrimination suits. As such, the plaintiff's MERA claims necessarily fail. The motion for summary judgment by Travis and Barry Chiler on Count Seven is therefore allowed.

D. *Assault and Battery (Count Eight)*

To prevail in a cause of action for civil assault and battery, the plaintiff must show that the defendant intentionally caused an offensive physical contact with the plaintiff or put the plaintiff in immediate apprehension of such a contact by an overt gesture. *Waters v. Blackshear,* 412 Mass. 589, 590-91 (1992); *Benson v. Norwood Dodge Sales, Inc.,* 2000 Mass.Super. LEXIS 421, * 11-*12 (August 14, 2000).

Simply put, the factual record does not support a claim of assault and battery against Travis Chiler. Morgan does not allege any physical contact with

Not Reported in F.Supp.2d  
2002 WL 15695 (D.Mass.)  
**(Cite as: 2002 WL 15695 (D.Mass.))**

Page 7

Travis Chiler whatsoever, nor does he claim that Travis threatened to physically harm him. Rather, Morgan's only allegations against Travis Chiler, specifically, are that he used racially derogatory language and attempted to get Morgan to move to a different lunch table. Words alone, without some overt act by the defendant, cannot sustain a claim for civil assault and battery. *Benson,* 2000 Mass.Super. LEXIS 421 at *11. Accordingly, the assault and battery claim against Travis and Barry Chiler fails.

*Conclusion*

**\*10** For the reasons stated above, the motions for summary judgment by defendants David Driscoll, Joseph Hanlon, Arthur Bettencourt, the Medway School Committee, the Town of Medway, Travis Chiler and Barry Chiler are ALLOWED.

2002 WL 15695 (D.Mass.)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.