UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

CIVIL ACTION NO. 04-11661MLW

2005 MAR 14 A 11: 54

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| MATTHEW WEYMOUTH<br>  Plaintiff, | : |
| v. | : |
| PENTUCKET REGIONAL SCHOOL DISTRICT;<br>PENTUCKET REGIONAL SCHOOL COMMITTEE;<br>MICHAEL J. MCLAUGHLIN, individually, and in his<br>capacity as Superintendent of Pentucket Regional School<br>District; JOHN PARKHURST, individually, and in his<br>capacity as Principal of Pentucket Regional High School;<br>ARLENE TOWNES, individually, and in her capacity as<br>Principal of Pentucket Regional High School;<br>DAVID MORSE, individually, and in his capacity as<br>Athletics Director for Pentucket Regional High School;<br>STEVEN HAYDEN, individually, and in his capacity as a<br>Teacher and Coach at Pentucket Regional High School;<br>MICHAEL BIANCI; ADAM CHAPMAN;<br>SCOTT WILKES,<br>  Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## MEMORANDUM IN SUPPORT OF
## MOTION TO DISMISS CERTAIN STATE CLAIMS
## AGAINST DEFENDANTS PENTUCKET REGIONAL SCHOOL DISTRICT,
## PENTUCKET REGIONAL SCHOOL COMMITTEE,
## MICHAEL J. MCLAUGHLIN, JOHN PARKHURST,
## ARLENE TOWNES, DAVID MORSE AND STEVEN HAYDEN

## STATEMENT OF THE CASE

This is a suit for damages for alleged torts and civil rights violations brought

against five officials of the Pentucket Regional School District in their individual and

official capacities, the Pentucket Regional School District and the Pentucket Regional

School Committee. The organizations are referred to hereafter as the "Pentucket

Entities." The plaintiff's claims arise out of an alleged hazing incident on August 23,

2001 at a football camp operated by Pentucket Regional High School "Pentucket High."

This memorandum is in support of a motion to dismiss certain of the state tort claims in the case. A separate motion to dismiss all of the federal claims is being filed herewith.

## STATEMENT OF FACTS

In his complaint, plaintiff Matthew Weymouth alleges that he was required to attend a football training camp operated by Pentucket High in order to qualify as a player on the team.

The camp was held at a facility known as Camp Marist in New Hampshire. Plaintiff alleges that his mother, Lorraine Weymouth, communicated concerns that she had about hazing to the Pentucket High Athletic Director, Defendant David Morse. Plaintiff alleges that Morse assured Lorraine Weymouth that "nothing would happen to her son at camp." Complaint ¶ 25. The plaintiff further alleges that at Morse's behest, several upperclassmen told Weymouth that he need not worry about hazing at the camp. Complaint ¶ 26. Plaintiff claims that in reliance on these assurances he attended the camp and was the victim of a hazing incident on the second day of camp, August 23, 2001.

Plaintiff alleges that defendant Scott Wilkes "teabagged" him, by dragging his exposed genitals across Weymouth's face as others held him down. Complaint ¶¶ 34-35. He further alleges that defendant Michael Bianci attempted to insert a peeled banana into Weymouth's rectum. Complaint ¶ 36. The claims against Adam Chapman are that he assisted Wilkes and Bianci. Complaint ¶ 30-33.

Defendants Wilkes, Bianci and Chapman were students at the school at the time and not employees or agents of Pentucket High.

Plaintiff claims that Pentucket High failed to enforce the state anti-hazing statute, M.G.L. c. 269, and its own anti-hazing policies and that such failures led to the incident in question.  Complaint ¶ 38.

In Counts I-VII the complaint asserts violations of 42 U.S.C. 1983 against the Pentucket school officials, which claims are the subject of a separate motion to dismiss. This memorandum is in support of the motion to dismiss certain of the state claims pursuant to the Massachusetts State Tort Claims Act, M.G.L. c. 258.

## ARGUMENT

The standard for evaluating a [Rule 12(c)] motion for judgment on the pleadings is 'essentially the same as the standard for evaluating a Rule 12(b)(6) motion.' *Petricca v. City of Gardner,* 194 F.Supp.2d 1, 4 (D.Mass.2002) (quoting *Furtick, et al. v. Medford Housing Authority, et al.,* 963 F.Supp. 64, 67 (D.Mass.1997). "[T]he trial court must accept all of the nonmovant's well-pleaded factual averments as true, and draw all reasonable inferences in his favor." *Rivera-Gomez v. de Castro,* 843 F.2d 631, 635 (1st Cir.1988) (citations omitted).

Here, plaintiff's claims that the defendants caused his injuries by reason of (1) failing to enforce state anti-hazing laws and local policies and (2) failing to properly supervise players at the football camp where plaintiff was allegedly harmed, are barred by MG.L. c. 258 § 10(j), the "failure-to-act" exception to Ch. 258.  His claims against the school officials as individuals are barred by M.G.L. c. 258 § 2.

Chapter 258 § 2 removes the defense of sovereign immunity in tort actions against state and local government entities (with certain limitations).  However, public employees remain immune from liability so long as they are acting within the scope of

their employment. *Id.* Furthermore, Ch. 258 § 10 provides 10 exceptions to the waiver of sovereign immunity as to public employers. For the reasons discussed below, plaintiff's claims relating to the failure of the Pentucket Entities to enforce anti-hazing laws and statutes, the alleged failure to prevent hazing at the camp and the alleged negligent infliction of emotional distress must be dismissed pursuant to § 10(j). In addition, since the complaint fails to allege that any of the public employee defendants were acting outside the scope of their employment, all of the claims against those defendants must be dismissed pursuant to M.G.L. c. 258 § 2.

### a. Claims falling within the § 10(j) exception

Ch. 258 § 10(j) provides in relevant part:

> The provisions of [Ch 258]sections one to eight, inclusive, shall not apply to:

> (j) any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer. This exclusion shall not apply to:

> (1) any claim based upon explicit and specific assurances of safety or assistance, beyond general representations that investigation or assistance will be or has been undertaken, made to the direct victim or a member of his family or household by a public employee, provided that the injury resulted in part from reliance on those assurances. A permit, certificate or report of findings of an investigation or inspection shall not constitute such assurances of safety or assistance; and

> (2) any claim based upon the intervention of a public employee which causes injury to the victim or places the victim in a worse position than he was in before the intervention;

Section 10 confers immunity from suit, *see, Spring v. Geriatric Auth. of Holyoke,* 394 Mass. 274, 285, 475 N.E.2d 727 (1985), a right that is "lost as litigation proceeds past motion practice," *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 145, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993). In light of the desirability of resolving immunity issues quickly, it is preferable to dispose of the question before discovery, as on a motion to dismiss. *See, Caron v. Silvia,* 32 Mass.App.Ct. 271, 273, 588 N.E.2d 711 (1992).

In Count VIII of the complaint, it is alleged that the Pentucket Regional School District, through its employees, failed to enforce policies, including the state anti-hazing statute (Ch. 269) and that it failed to prevent abuse to Weymouth at the hands of other football players. Complaint ¶¶ 138, 139. Similar claims are made in the counts alleging negligent infliction of emotional distress against the Pentucket Entities and officials in Counts XVIII-XXIV.

There can be no question that these claims fit squarely within the exception in 10(j).

There are two issues that must be addressed to make this determination:

First, it must be determined whether liability against the defendant is alleged for "failing to prevent or mitigate" harm, on the one hand, or taking active steps that make it the original cause of the harm, on the other.

The second question to be addressed is whether one of the two exceptions to § 10(j) applies.

8338.0/334479.1

**(1)   The subject claims are barred as they are claims of failure to prevent harm by third parties.**

In *Brum v. Town of Dartmouth*, 428 Mass. 684, 704 N.E. 2d 1147 (1999), the Supreme Judicial Court held that "the principal purpose of 10(j) is to preclude liability for failures to prevent or diminish harm, including harm brought about by the wrongful act of a third party." *Id.* at 696. Obviously, the alleged failure to enforce policies and protect Weymouth from harm are claims "based on a . . . failure to act" and fall within exception (j). Plaintiff cannot argue that the failure to enforce anti-hazing statutes and policies falls outside the §10(j) exception by virtue of being the "original cause" of the harm. That argument is foreclosed by the *Brum* court which held that such an interpretation of the exception would swallow its main purpose. *Id.*, 695-696.

In *Brum*, the plaintiff's decedent was knifed to death in a classroom. Earlier on the same day, those allegedly involved had entered the school and been involved in a violent altercation. They threatened to return to retaliate and that information was passed on to school officials who failed to prevent the later murder.

The municipal entities were sued for their alleged failure to adopt and implement a school security policy and their failure to intercept the third-party perpetrators after learning of their intent to injure plaintiff's son. The Supreme Judicial Court held that § 10(j) bars claims for injuries arising out of a school's failure to maintain adequate security measures and protect students from known threats. *See id.* at 696, 704 N.E.2d 1147.

In drawing the distinction between failing to prevent harm by others and being the "original cause" of the harm the *Brum* court pointed to *Bonnie W. v.*

8338.0/334479.1

6

*Commonwealth*, 419 Mass. 122, 126-27 (1994).  In *Bonnie W.* the plaintiff was sexually assaulted by a convict on probation employed as a maintenance worker in the trailer park where she lived.  The theories of liability were that the parole officer was negligent in supervision and negligent by virtue of recommending the assailant for a maintenance position in the trailer park, giving him access to the keys of the residents.  The *Brum* court noted that in *Bonnie W* it had held that § 10(j) barred the first claim since it "could be characterized only as a failure to prevent the assailant from being in a position to attack the plaintiff, whereas the negligent recommendation was an affirmative act that created a situation in which a sexual predator held a job giving access to the keys to every trailer in the park." *Id.* at 695.  See also, *Lawrence v. Cambridge*, 422 Mass. 406, 409 (1996)(The court noted in dicta that 10(j) would bar plaintiff's claim where it had provided promised protection for three nights, but not the fourth, on which plaintiff was shot); *Doe v. Old Rochester Regional School Dist.*, (D.Mass.1999) 56 F.Supp.2d 114.  (Claim that school district breached its duty to prevent or mitigate harassment directed at student barred by § 10(j) - even if school district ignored student's complaints about harassment by other students, there were no allegations that it "originally caused" the harassment); *Armstrong v. Lamy*, 938 F.Supp.1018 (D.Mass.1996)(Section 10(j) barred former student from asserting claims against city for negligent acts of public employees – other than teacher/perpetrator - in failing to prevent teacher from molesting student and for failing to train, supervise, regulate, control, or correct teacher); *Canty v. Old Rochester Regional School Dist.*, 54 F.Supp.2d 66 D.Mass.1999 (high school student

allegedly raped by athletic coach barred by § 10(j) from asserting claims against school based on negligent acts of school employees - other than coach/perpetrator).

Similarly, in this case, the claims of failure to enforce state statutes and local anti-hazing policies and failure to prevent the hazing cannot be said to have "originally caused" the third-party conduct that allegedly led to the harm here. The complaint itself alleges that the hazing was carried out by three fellow football players who are not, and are not alleged to be, agents or employees of the Pentucket Entities. Thus the exception in § 10(j) provides immunity as to these claims.

### (2) Neither of the exceptions to 10(j) is applicable to the claims in issue.

The plaintiff did set forth certain theories of liability that allege conduct falling within one of the two exceptions to §10(j). In Counts XXVIII and XXIX it is alleged that assurances of safety were given to Lorraine Weymouth by the athletic director, David Morse, which, if proven, would trigger exception (1). It is also alleged in ¶¶ 26 and 41 that coach Steven Hayden informed upperclassmen of plaintiff's concerns about hazing, thus precipitating the harm, which, if proven, would trigger exception (2).

However, the claims that are the subject of this motion – failing to enforce statutes and anti-hazing policies and failing to prevent the perpetrators from harming plaintiff while at Camp Marist – allege no conduct that could possibly be described as fitting one of the exceptions.

### b. All claims against the individual public employees must be dismissed

MGL c. 258 § 2 provides in relevant part:

> [n]o such public employee or the estate of such public employee shall be liable for any injury or loss of property or personal injury or death caused by his negligent or wrongful

8338 0/334479.1

act or omission while acting within the scope of his office or employment;

Thus, in *Martinez v. Wolferseder*, 997 F.Supp. 192 (D. Mass. 1998) it was held that a municipal police chief could not be held personally liable to the victims of alleged police brutality by subordinates, because Ch. 258 § 2 conferred immunity when a state employee was acting in the scope of employment and any negligent supervision by the chief occurred within his scope of employment. Similarly, in *Armstrong v. Lamy, supra* 938 F. Supp. 1018, the court held that school officials could not be held liable where there were no allegations that any acted outside the scope of employment. In that case, the public employee defendants were a school principal, a superintendent and seven school committee members, against whom was alleged negligence, negligent supervision, negligent training and negligent hiring in connection with sexual abuse of a student by a teacher.

Similarly, here the public employee individual defendants are Michael J. McLaughlin, superintendent, John Parkhurst and Arlene Towns, two principals, David Morse, the athletic director and Steven Hayden, the football coach. Clearly, Counts XXXIX and XXX assert individual claims. The remaining state claims might or might not be intended to allege claims in individual capacities, but the caption indicates that all named individuals are sued both as officials and individuals.[1] There is not one allegation anywhere in the complaint that even comes close to alleging that any of the individuals acted outside the scope of his or her employment.

---

[1] The effect of allowance of this motion on individual counts is set forth in the motion.

8338.0/334479.1

## CONCLUSION

For all of the above reasons, the defendants request that this court dismiss the plaintiff's claims to the extent that they allege that the Pentucket Entities and/or its employees were negligent for failing to enforce the state anti-hazing statute, for failing to enforce local anti-hazing policies or for failing to take steps to prevent the third-party perpetrators in this case from causing harm to plaintiff. Defendants further request that all claims against Michael J. McLaughlin, John Parkhurst, Arlene Townes, David Morse and Steven Hayden as individuals be dismissed. The effect of allowance of this motion on individual counts is set forth in the motion.

Dated: October 21, 2004

Respectfully submitted,

Defendants,
**PENTUCKET REGIONAL et al.**
By their attorney,

Gregg S. Blackburn, BBO# 044430
CASNER & EDWARDS, LLP
303 Congress Street
Boston, MA 02210
(617) 426-5900

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon:

**Counsel for Plaintiff:**

Peter C. Horstmann, Esq.
Partridge, Ankner & Horstmann, LLP
200 Berkeley Street, 16th Floor
Boston, MA  02116

8338.0/334479.1

10

**Counsel for Michael Bianci and Adam Chapman:**

Scott F. Gleason, Esq.
Melissa J. Lewandowski, Esq.
Gleason Law Offices. P.C.
163 Merrimack Street
Haverhill, MA  01830

**Counsel for Scott Wilkes:**

Vincent C. Manzi, Esq.
Charles S. Nierman, Esq.
Manzi & McCann
59 Jackson Street
Lawrence, MA  01840

**Co-Counsel for David Morse and  Steven Hayden**
Bradley A. MacDonald, Esq.
Cummings, King and MacDonald
One Gateway Center
Suite 351
Newton, MA 02458-2802

counsel of record in this matter by **electronic filing (if applicable)** and **first-class mail**
on October _21_ , 2004.

Gregg S. Blackburn

8338.0/334479.1

11