UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MATTHEW WEYMOUTH,
    Plaintiff,

v.

PENTUCKET REGIONAL SCHOOL DISTRICT; )
PENTUCKET REGIONAL SCHOOL        )       Civil Action No: 04-11661MLW
COMMITTEE; MICHAEL J. MCLAUGHLIN,  )
individually, and in his capacity as Superintendent )
of Pentucket Regional School District; JOHN  )
PARKHURST, individually, and in his capacity as )
Principal of Pentucket Regional High School;  )
ARLENE TOWNES; individually, and in her  )
Capacity as Principal of Pentucket Regional High )
School; DAVID MORSE, individually, and in his )
capacity as Athletics Director for Pentucket  )
Regional High School; STEVEN HAYDEN,  )
individually, and in his capacity as a Teacher and )
Coach at Pentucket Regional High School;  )
MICHAEL BIANCI;  ADAM CHAPMAN;   )
SCOTT WILKES,             )
    Defendants.             )

**MEMORANDUM IN OPPOSITION BY PLAINTIFF MATTHEW WEYMOUTH TO
DEFENDANTS PENTUCKET REGIONAL SCHOOL DISTRICT, PENTUCKET
REGIONAL SCHOOL COMMITTEE, MICHAEL J. MCLAUGHLIN, JOHN
PARKHURST, ARLENE TOWNES, DAVID MORSE AND STEVEN HAYDEN'S
<u>MOTION TO DISMISS FEDERAL CLAIMS</u>**

Plaintiff Matthew Weymouth ("Weymouth") hereby opposes the Motion To Dismiss

Federal Claims By Defendants Pentucket Regional School District, Pentucket Regional School

Committee (hreinafter collectively referred to as the "Pentucket entities'), Michael J

McLaughlin, John Parkhurst, Arlene Townes, David Morse and Steven Hayden (collectively

referred to as the "school officials"

## I.  STATEMENT OF THE CASE

This action arises out of an incident on August 23, 2001, whereby Weymouth was the subject of an unprovoked, violent and humiliating attack, involving acts of sexual molestation, by certain fellow members of the Pentucket Regional High School football team.  Weymouth maintains that his attackers' actions were taken pursuant to a longstanding practice of unfettered hazing that school officials permitted and even facilitated, involving abusive physical and sexual attacks by upperclassmen on younger students.  Weymouth's Complaint and Jury Demand (the "Complaint") sets forth thirty claims, the first seven of which are claims under 42 U.S.C. Section 1983 against the defenants for the deprivation of constitutional rights, including the right to be free from intrusion upon bodily integrity and the right to protection of personal liberty (the "federal claims").  Defendants have moved, pursuant to Fed. R. Civ. P. 12(c), to dismiss Weymouth's federal claims.  For the reasons set forth herein, Weymouth has pled sufficient facts to support his federal claims and therefore, defendants' motion should be denied

## II.    STATEMENT OF FACTS

In his Complaint, Weymouth alleges that in order to play on the Pentucket Regional High School football team, he was required to attend a mandatory summer training camp before the football season began.  Complaint, Para. 15  Historically, hazing had taken place at the camp each summer, including the perpetration of verbal harassment and physical assault by older upperclass players against younger underclass players. Complaint, Para. 16, 19.  Despite having an anti-hazing policy, the Pentucket entities failed to enforce its provisions in every way, from prevention to punishment.  Complaint, Para. 38  None of the school officials took action to prevent or deter hazing amongst the students at the camp or to protect the younger players from harm, and consequently, the camp was permitted to continue the tradition of hazing from year to

2

Complaint, Para. 18, 19. Weymouth alleges that he elected not to attend the camp so as to avoid being a victim of hazing and assault. Complaint, Para. 20.

Defendant Hayden, the coach of the team, strongly encouraged Weymouth to attend the camp, assuring Weymouth that faculty chaperones would supervise the team and that he would not be harmed at camp. Complaint, Para. 20-23. Weymouth's mother contacted the athletic director, defendant Morse, and expressed her concerns about hazing at the camp. Complaint,

24. The athletic director assured Weymouth's mother that nothing would happen to her son at camp. The athletic director told the upperclassmen on the football team, including the captain, to speak to Weymouth. Complaint, Para. 25. Several upperclassmen, including the captain, told Weymouth not to worry about hazing at the camp and that they would not let anything happen to him there. Complaint, Para. 26. Based on these assurances, Weymouth decided to attend the camp. Complaint, Para. 27. While at the camp, Weymouth was the victim of an unprovoked attack by upperclass team mates who restrained him, carried him to a common area, and pulled down his pants. While 15-20 students, unchaperoned, watched and jeered the assault, defendant Scott Wilkes dragged his genitals across Weymouth's face and defendant Michael Bianci attempted to insert a peeled banana into Weymouth's rectum. Complaint, Para.

As a result of the attack, Weymouth suffered serious injuries, his grades dropped, he underwent further harassment by students, and was forced to leave the high school. Complaint, Para. 42, 44, 45.

### III    ARGUMENT

## A.    STANDARD OF REVIEW

Under the liberal notice pleading standard of Fed.R.Civ.P. 12(b)(6), the instant motion should only be granted if, taking all the facts and inferences in favor of plaintiffs, "it clearly

appears according to the facts alleged, that the plaintiff[s] cannot recover on any viable theory."
Canty v. Old Rochester Regional School District, 54 F.Supp.2d 66 (D. Mass. 1999), *quoting*
Garita Hotel Ltd. Partnership v. Ponce Fed. Bank, 958 F.2d 15, 17 (1st Cir. 1992). Notably in
Canty, a case brought by a student and her parents against a school district and certain school
supervisory employees, the District of Massachusetts explained that even where plaintiff student
could have provided a clearer description in her complaint of the school defendant's actual
knowledge of a teacher's sexual misconduct, the allegations passed the liberal notice pleading
standards of the Federal Rules of Civil Procedure.

B.    DEFENDANTS' MOTION TO DISMISS MUST BE DENIED BECAUSE PLAINTIFF
      HAS SUFFICIENTLY PLED A DEPRIVATION OF CONSTITUTIONAL RIGHTS
      UNDER 42 U.S.C. § 1983

Weymouth's claims under 42 U.S.C. §1983 are grounded on his right to bodily integrity
and right to protection of personal liberty. The right to be free from damage by the state to a
person's bodily integrity is protected by the Fourteenth Amendment's guarantee of due process.
Youngberg v. Romeo, 457 U.S. 307, 319 (1982); Ingraham v. Wright, 430 U.S. 651, 673-74
1977). Numerous cases hold that state officials can be liable for the acts of third parties where
those officials took affirmative acts that created or enhanced the danger that caused the harm to
the student. In other words, government actors have a duty to protect citizens from deprivations
of liberty by third parties when they take affirmative steps and thereby put that individual in
danger. DeShaney v. Winnebago County Dep't of Social Services, 489 U.S 189, 198-202
(1989). See also Dwares v. City of New York, 985 F.2d 94 (2nd Cir. 1993) (finding state created
danger claim was pled under §1983 where police conspired with skinheads to permit beating of
flag burners); Freeman v. Ferguson, 911 F.2d 52 (8th Cir. 1990) (finding requisite affirmative
acts for state created danger claim where woman was killed by her estranged husband after chief

of police had directed officers to ignore her pleas for help; chief's interference increased the woman's vulnerability and may have ratified or condoned the violent actions); Kneipp v. Tedder, 95 F.3d 199 (3d Cir. 1996) (finding that triable issue existed based on state created danger theory where police had stopped intoxicated pedestrian walking home from bar and left her to walk home alone in cold weather). Weymouth's Complaint contains ample allegations to support the theory that defendant school officials created or enhanced the danger that caused harm to him. Accordingly, he has pled a claim under 42 U.S.C. §1983 and defendants' motion to dismiss must be denied.

In their Motion to Dismiss Federal Claims, defendants seek the dismissal of Weymouth's §1983 claims by relying on the line of cases where a school is aware of a danger posed to the student body generally yet fails to take appropriate measures to prevent the danger from occurring. This characterization conveniently overlooks that in this case, Weymouth has pled that the school officials, aware of the danger posed to him, took certain affirmative actions to ensure that he would attend a camp where there was a high degree of likelihood that he would be physically and sexually abused by other students. Indeed, Weymouth alleges in his Complaint that by their actions the school officials made such abuse *even more likely to occur*. There is no doubt then that plaintiff has sufficiently pled affirmative actions by the defendants that created or increased a known danger to him. Weymouth's injuries were the result not only of the school official's failure to protect Weymouth from a known harm, but also by their affirmative actions of implementing and condoning the custom of hazing. Certainly the school officials displayed a conscious disregard for the risk that Weymouth would suffer a constitutional deprivation of liberty at the hands of other students.

Fully recognizing the limits <u>DeShaney v. Winnebago County Dep't of Social Servs.</u>, 489 U.S. 189, 109 S.Ct. 998 (1989) places on the availability of a §1983 claim arising from injuries caused by the intentional tortious conduct of third parties, Weymouth has not asserted a violation of a *general* constitutional duty. Rather, Weymouth has pled facts supporting a claim that the government's agents, by its affirmative acts, violated a *specific* constitutional duty to protect him from the harmful conduct of third parties. <u>See</u> <u>Morgan v. Driscoll</u>, 2002 WL 5695 (D.Mass. 2002) ("While the First Circuit has been disinclined to accept [the] broad notion that schools have no duty to protect students from the harmful acts of third parties, it has nonetheless recognized that a school has no general duty to protect students, and might only have a "specific duty" to protect a student in situations where inaction and failure to protect that student would be "truly outrageous, uncivilized, and intolerable" under the circumstances.  Here, where the school defendants created the hazardous situation, a virtual time bomb certain to cause harm to Weymouth, the exception articulated in <u>DeShaney</u> for situations where the government takes some action to increase the threat of harm to the injured party applies to afford Weymouth a §1983 claim. <u>Deshaney</u>, 489 U.S. 189, 199, 201-202.

The United States Court of Appeals for the First Circuit has held that while generally the school/student relationship is not a custodial relationship invoking constitutional protections, in certain situations a public school may owe its students a constitutional duty to protect.  The court in <u>Hasenfus v. LaJeunesse</u>, 175 F.3d 68, 72 (1st Cir. 999) explained:

> [W]e are loathe to conclude now and forever that inaction by a school toward a pupil could never give rise to a due process violation. . . . For limited purposes and for a portion of the day, students are entrusted by their parents to the control and supervision of teachers in situations where—at least as to very young children—they are manifestly unable to look after themselves.

The First Circuit went on to explain that a school's dereliction of duty must "shock the conscience" to be actionable under 42 U.S.C. §1983. In other words, the conduct must be "outrageous, uncivilized, and intolerable." Id. at 72. Defendants suggest that because the conduct of the school official at issue in Hasenfus did not meet the "shocks the conscience" test, then it follows that the conduct alleged by Weymouth cannot clear that hurdle either. In Hasenfus, the court found that a gym teacher's act of publicly reprimanding a student he knew had been raped a year prior and sending her to an unsupervised locker room, when the teacher knew that some other students at the school had attempted suicide, could not be construed as malicious conduct toward that student or "conscience shocking." In arriving at its holding, the court explained that the facts were a far cry from those cases involving "manifestly outrageous behavior by the authorities certain to cause harm." Id. at 74. Thus, the First Circuit left open the possibility that some affirmative act by a school that increases a danger to a child might rise to the "shocks the conscience" level.

The First Circuit in Hasenfus suggested it might entertain a §1983 claim based on facts similar to those present in Armijo v. Wagon Mound Public Schools, 159 F.3d 1253 (10th Cir. 1998) stating that to the extent the court's holding in Armijo is sound, it is at the "outer limit" of generosity to plaintiffs in a §1983 cases. Contrary to defendants' assertions, however, the facts of this case are considerably more "conscience shocking" than those present in Armijo. The school officials in Armijo sent a student home in a situation where they should have been aware of a possibility he would try to commit suicide. Yet the school officials in this case coerced Weymouth to attend a camp where they knew there was a high degree of likelihood he would be abused by other students.

The facts of the instant case are more akin to those present in <u>Canty v. Old Rochester</u> <u>Regional School District</u>, 54 F.Supp.2d 66 (D. Mass. 1999), where the court deemed the school's conduct to be actionable under §1983. In <u>Canty</u> the court found that plaintiff stated a due process claim where the school administrators, with knowledge that a teacher sexually assaulted his student, had placed the student back in the same teacher's supervision. The court's opinion is enlightening:

> In light of <u>Hasenfus</u> and <u>Frances-Colon</u>, this Court would be remiss if it failed to hold liable those who, with actual knowledge of the pertinent facts, required a student to attend school under the supervision of a teacher who formerly had sexually assaulted her or other students. Surely such conduct is "truly outrageous, uncivilized, and intolerable." Indeed, what could be more outrageous? Under such circumstances, it is impossible for a student to attend to her own well-being at school. . . . Unlike safeguarding students from suicidal tendencies—which the <u>Hasenfus</u> court held is the primary responsibility of parents—there is no amount of loving support, therapy, or medication that parents can provide to their children that will prepare them to fend off a sexual predator masquerading as a public school teacher.
>
> Of course, it must be clear from the complaint . . . that a school (or its officials) failed to act after acquiring actual knowledge of a substantial danger to students. A school (or its officials) cannot be held accountable for an employee who, with no warning or prior history, suddenly attacks or sexually assaults a student. It is only the actual knowledge of credible reports of serious intentional harm to a student or students by a teacher that makes a school's subsequent failure to act shocking.

<u>Id</u>. at 72. Applying the reasoning from <u>Canty</u> to the facts alleged in this case, the school officials' acts of encouraging Weymouth to attend the camp despite his fear he would be abused, and their act of informing upperclassmen, including the captain of the football team, of Weymouth's concerns, are shocking. Weymouth has alleged that the school officials took these actions with full knowledge of the annual custom whereby upperclass students at the camp

abused younger students. The school officials, by permitting, sanctioning and even facilitating the pattern and custom of hazing, they created (and enhanced) a danger of harm to Weymouth that is truly outrageous, uncivilized, and intolerable.

Dwares v. City of New York, 985 F.2d 94 (2d Cir. 1993) also supports Weymouth's state created danger theory. In Dwares, "skinheads" beat up the plaintiffs and the police did not intercede to protect them. The Second Circuit Court of Appeals found that plaintiffs had stated a claim under 42 U.S.C. §1983, explaining:

> The complaint in the present case was unlike that in DeShaney because it went well beyond allegations that the defendant officers merely stood by and did nothing, and that circumstances were merely suspicious. It alleged that the officers conspired with the "skinheads" to permit the latter to beat up flag burners with relative impunity, assuring the "skinheads" that unless they got totally out of control they would not be impeded or arrested. It requires no stretch to infer that such prior assurances would have increased the likelihood that the "skinheads" would assault demonstrators. Thus, in the present case, the complaint asserted that the defendant officers indeed had made the demonstrators more vulnerable to assaults. Further, it is alleged that the officers had in effect aided and abetted the deprivation of Dware's civil rights by allowing him to be subjected to the prolonged assault in their presence without interfering with the attack. Such a "prearranged official sanction" of privately inflicted injury would surely have violated the victim's rights under the Due Process Clause.

Id. at 99.

Hilton v. Lincoln-Way High School, 1998 WL 26174 (N.D. Ill. 1998) is also instructive here. In Hilton, plaintiff student brought an action under §1983 against her high school and certain of its employees and officials for violating her Fourth and Fourteenth Amendment rights by forcing her to participate in hazing activities while attending a week long retreat required for members of the high school band. The hazing that plaintiff was subjected to included, *inter alia*, being forced to wear a bag over her head, being held in a locked room with the exits barred by chaperones, being forced to participate in a ceremony "similar to a sacrifice scene from an occult

9

movie and a medieval knighting ritual      including tall "sword" wielding men in costumes

reminiscent of the Knights of the Ku Klux Klan." Id. at *2. In her complaint, plaintiff

maintained that the retreat had taken place yearly for over thirty years and that the high school

officials, who knew or should have known of the hazing practices, approved of the retreat and

corresponding rituals.   Addressing the issue of whether plaintiff had adequately pled the

existence of an official policy, the court explained.

> If no formal written policy exists, [plaintiff] must allege a specific pattern
> or series of incidents that support a general allegation of a custom or
> policy of unconstitutional conduct. [citations omitted]. Allegations of a
> pattern or series of acts can raise an inference that a municipal policy or
> custom exists. [citations omitted] Significantly, in a civil rights case
> alleging municipal liability under Section 1983, a federal court may not
> hold a plaintiff to a heightened pleading standard more stringent than
> those prescribed by Fed.R.Civ.P. 8(a). [citations omitted].

The court held that the complaint contained sufficient factual allegations of a pattern of

unconstitutional conduct to satisfy the liberal notice pleading standards under the federal rules.

Turning to the issue of whether plaintiff had pled the deprivation of a constitutional right, the

court explained that plaintiff must allege acts which amount to shocking or brutal conduct. The

court denied defendants' motion to dismiss, finding that it could not make a factual

determination, at the motion to dismiss stage, as to whether defendants' conduct was sufficiently

shocking to violate the Constitution. Id. at *9.

Defendants' reliance on Willhauck v. Town of Mansfield, 164 F.Supp.2d 127 (D. Mass.

2001) is misplaced, in light of the significant distinctions between the facts in Willhauck and

those pled by Weymouth in the instant case. In Willhauck, a middle school student suffered

brain damage following an attack by a high school student with severe behavioral problems who

had a past history of violence. The injured student and his parents brought suit for violation of

due process rights under 42 U.S.C. §1983 against the municipality, school committee, school

psychologist, special education director, and principal. The school had admitted the high school student into a special program for students with serious behavioral disorders which involved 100% supervision of students during, but not outside of, school hours. The school accepted the high school student into the program aware that while attending another high school, he had threatened another student with some kind of weapon. The court held that because the beating took place after the school day, and therefore after the custodial relationship ended, and because the conduct of the school did not rise to conscience shocking level, liability under §1983 could not attach. According to the court's opinion, the school's conduct in accepting the attacker into the program and failing to supervise him outside the time frame that the school had promised supervision may have shown poor judgment, yet it was not egregious enough to trigger constitutional protection.

Weymouth has alleged that school officials committed reckless and even deliberate conduct, not mere negligence as was the case in Willhauck. Indeed the conduct alleged by Weymouth suggests the school officials displayed the sort of "deliberate indifference" which in prison cases courts have deemed sufficient to invoke constitutional protections. The Willhauck court explained that even under the standard used in the prison cases where the public official deliberately disregards an excessive risk to the health or safety of the prisoner, the plaintiff's claim failed. The court explained: "[t]he plaintiffs have produced no evidence that the defendants were actually aware of any specific threat or danger that [the attacker] imminently posed to [plaintiff]." Id. at 134. Notably, Weymouth has alleged that defendants were well aware of a highly specific threat that upperclass participants of the camp posed to him, and they were deliberately and recklessly indifferent to Weymouth's safety and physical well-being.

11

Defendants' emphasis on the fact Weymouth voluntarily attended the camp is misleading. According to his Complaint, Weymouth initially did elect not to play football. He ultimately decided to attend the camp only after the coach and athletic director and fellow students persuaded him that he *would not be abused* at the camp  The voluntariness of a student's participation in a school program simply does not foreclose a §1983 claim where plaintiff alleges facts supporting liability under the "state-created danger" theory.

Moreover, defendant's disingenuously suggest that Weymouth's §1983 claim rests entirely on allegations that the coach simply encouraged him to attend camp or that the athletic director solicited reassurances from upperclassmen. See Defendants' Memorandum in Support of Motion to Dismiss, p. 10. Rather, Weymouth has alleged facts suggesting that the school officials set up a situation where it was a near certainty plaintiff would be abused by other students. If school-sanctioned student abuse does not shock the conscience, query what conduct would meet that standard. Here the coach and athletic director encouraged Weymouth to put aside his fears of being abused at camp at the hands of upperclassmen, thereby directly affecting his decision of whether or not to attend the camp, all the while knowing it was highly likely that other students at that camp would violently and maliciously attack Weymouth while at the camp Indeed, a reasonable inference can be drawn from the Complaint that the school officials in effect coerced Weymouth to attend the camp by promising him security that they had not intention of providing. Finally, and perhaps most importantly, a reasonable inference can be drawn that by informing upperclassmen of Weymouth's concerns regarding hazing, the coach and athletic director increased the likelihood that Weymouth would be subjected to an attack by upperclass camp participants. Unlike the conduct of the school official in Hasenfus, the conduct alleged in this case involves school officials actively seeking to put a child in danger.

12

Defendants' reliance on Doe v. Londonderry School District, 970 F.Supp. 64 (D. N.H. 1997) to support dismissal of the federal claims is also in error. In Doe, a junior high school student complained to the school guidance counselor of sexual harassment by fellow students and in response and at the plaintiff's request, the guidance counselor spoke with perpetrators. The court held that even though the guidance counselor's actions may have resulted in increased harassment toward the plaintiff, it did not amount to an affirmative act that increased the risk of harm to plaintiff within the meaning of §1983. It was undisputed that the counselor spoke to the boys at plaintiff's request and in an attempt to get them to cease the harassment. The court clarified, "The plaintiff has adduced no evidence to establish that speaking to the boys was an inappropriate or unreasonable way to attempt to curtail the harassment. Therefore, no reasonable factfinder could conclude that [the guidance counselor's] act of speaking to the boys rose to the level of a due process violation. Id. at 77. In the instant case, the allegations of the Complaint permit a reasonable inference that the coach and athletic director's act of speaking to the other football players was an inappropriate and unreasonable way to attempt to prevent abuse of Weymouth. Thus, Weymouth has adequately pled a due process violation based on the acts of the athletic director, defendant Morse, and coach, defendant Hayden.

C.    DISMISSAL OF THE FEDERAL CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS IS NOT WARRANTED.

> Plaintiff Has Pled Sufficient Allegations To Support A Claim Against the Individual Defendants In Their Personal Capacities.

Defendants maintain that because there is no duty to enforce anti-hazing statutes or policies or to protect plaintiff other than in an official capacity, the school officials cannot be held liable under 42 U.S.C. §1983 in their personal capacities. Yet Weymouth has alleged far more than a failure to protect a student from injury. See *infra*, Section II. Here, where the

plaintiff has alleged the individual defendants took certain affirmative actions, thereby creating a danger to him, the claim against the individuals in their personal capacities should not be dismissed at the pleadings stage. See Dwares, 985 F.2d at 99 (complaint alleging that police officers conspired with "skinheads" to permit them to beat up flag burners, reassuring them they would not be arrested, was sufficient to state cause of action against officers in their individual capacities under 42 U.S.C. §1983 for violation of due process).

2.    Qualified Immunity Does Not Apply To Shield Defendants From Weymouth's Claims.

Defendants Morse and Hayden are not entitled to qualified immunity for their actions because government officials performing discretionary functions are not shielded from liability for civil damages under 42 U.S.C. §1983 where their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "A reasonably competent public official should know the law governing his conduct." Chapman v. Nichols, 989 F.2d 393, 397 (10th Cir. 1993). A "precise factual correlation between the then-existing law and the case at-hand is not required." Patrick v. Miller, 953 F.2d 1240, 1249 (10th Cir. 1992).

Incredulously, defendants maintain that no reasonable person in Morse and Hayden's position would have realized that their conduct constituted a state created danger. Certainly the right to be free from physical and sexual abuse and the right not to be deprived of one's liberty without due process of law are so fundamental and well-established that defendants cannot legitimately maintain they were unaware of such rights at the time in question. Certainly Morse and Hayden should have understood that their actions violated those rights. See Seamons v. Snow, 206 F.3d 1021, 1030 (10th Cir. 2000) (finding football coach was not entitled to qualified immunity from §1983 claim where plaintiff-football player was dismissed from team for

14

15

refusing to apologize for reporting to police and school authorities that he had been assaulted by teammates; it was clearly established prior to incident that coach could not penalize player for engaging in peaceful speech activity).

## IV.    CONCLUSION

For all of the foregoing reasons, Weymouth urges this Honorable Court to deny Defendants'

Motion To Dimiss Federal Claims in its entirety.

Respectfully submitted,

MATTHEW WEYMOUTH

By his attorneys,

Peter Charles Horstmann, Esquire
BBO #556377
PARTRIDGE, ANKNER & HORSTMANN, LLP
200 Berkeley Street, 16th Floor
Boston, Massachusetts 02116
(617) 859-9999

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon:

**Counsel for Pentucket Regional et al.:**
**Chapman:**
Gregg S. Blackburn, Esq.
Casner & Edwards, LLP
303 Congress Street
Boston, MA 02210

**Counsel for Michael Bianci and Adam**
Scott F. Gleason, Esq.
Melissa J. Lewandowski, Esq.
Gleason Law Offices, P.C.
163 Merrimack Street
Haverhill, MA 01830

**Counsel for Scott Wilkes:**
**Hayden:**
Vincent C. Manzi, Esq.
Charles S. Nierman, Esq.
Manzi & McCann
59 Jackson Street
Lawrence, MA 01840

**Co-Counsel for David Morse and Steven**
Bradley A. MacDonald, Esq.
Cummings, King and MacDonald
One Gateway Center, Suite 351
Newton, MA 02458-2802

counsel of record in this matter by electronic filing (if applicable) and first-class mail on
November 4, 2004.

Peter Charles Horstmann, Esquire

16